## JOHN BURNS *vs.* LYMAN W. DAGGETT.

Bristol.   Oct. 29, 1885. — March 31, 1886.   FIELD & C. ALLEN, JJ., absent.

An account between A. and B. in the handwriting of A., containing the item, " B. Dr. To house lot," and stating the amount, but not otherwise signed by A., is not a sufficient memorandum in writing signed by him, within the statute of frauds, Pub. Sts. *c.* 78, § 1.

The occupation of, and the making of repairs and improvements upon, premises agreed orally to be conveyed, do not, of themselves, prevent the statute of frauds, Pub. Sts. *c.* 78, § 1, *cl.* 4, being a good defence to a bill in equity for specific performance of the contract; but, to have that effect, such occupation and expenditures must have been induced by the contract, and in reliance upon its performance, and such that adequate compensation cannot be made for them by the defendant except by the conveyance of the premises, so that it will be fraudulent in him to withhold a conveyance, and estop him from setting up the statute against the plaintiff's demand for a deed.

A. agreed orally to convey to B. a parcel of land and a house for $700, $10 to be paid each month, and annual interest on the balance until all should be paid, and B. was to make necessary repairs on the house and pay the taxes. B. went into possession, and continued the occupation without interruption for ten years, and during that time spent about $100 in repairs on the house, and set out a few fruit trees and vines, and cleared off bushes, and improved a small piece of land, at slight expense. B. had also paid to A., besides the taxes and the $100 above mentioned, about $550 on the contract debt, $400 of which was for interest, and the rest on the principal; and the use of the premises, a reasonable rent for which was $7 a month, was worth over $850. A. then went upon the premises with a surveyor for the purpose of surveying them, and a disagreement arose between the parties as to the lines of the land agreed upon. B. then told A. that he would have nothing more to do with the place, and all he wanted was that A. should pay him what he owed him; and A. told him he would do so whenever B. would leave the house. After the survey was completed, B. expressed himself, but not to A., as satisfied with the lines run, and afterwards built a fence at a cost of $25. B. made no further payment, and there was no further communication between the parties, B. continuing to occupy the premises for eight months longer, when A. entered and constructed a road through them. B. then objected to the making of the road, and demanded a deed, but made no tender of payment. About eleven months afterwards, A. tendered to B. the amount he had paid on the contract above the interest, and requested him to quit the premises. *Held*, that these facts did not show such a part performance of the contract by B. as to entitle him to a decree for specific performance, on a bill in equity brought by him against A.

BILL IN EQUITY, filed September 22, 1883, for specific performance of two contracts by the defendant to convey two parcels of land, and a dwelling-house thereon, in Attleborough. The answer, among other defences, set up the statute of frauds. The case was referred to a master, the material parts of whose report were as follows :

" In the fall of 1871, the defendant orally agreed to sell and convey to the plaintiff about one acre of land and a dwelling-house thereon. In the spring of 1873, he further orally agreed to sell and convey to the plaintiff another acre of land adjoining the first. The price of the first tract of land and the building thereon was $600; of the second tract of land, $100.

" The parties did not agree, at the hearing before me, as to the terms of said contracts. And I find that the terms of sale in each case were, that the plaintiff should pay $10 a month, and annual interest, at the rate of six per cent, upon the balance of each year, until the whole consideration was paid, and should pay all taxes assessed upon the premises, and should do necessary repairs upon the dwelling-house, and in the mean time the

plaintiff should have the occupation of said premises. The plaintiff did not make payments according to the terms of the contract, nor did the defendant insist upon it, and I find that so much of the contract was waived by the defendant.

"Prior to November 1, 1871, which was about the date of the first contract of sale, there had been mutual dealings between the plaintiff and defendant, as the result of which the plaintiff was indebted to the defendant in the sum of $24.95. An open and unsettled account was continued between the parties. The sum of $600 for the first sale of land and building, and the sum of $100 for the sale of the second tract of land, were charged as items in this account to the plaintiff. From November 1, 1871, to November 1, 1882, the defendant sold and delivered to the plaintiff at sundry times provisions, wood, and other things, to the amount of $271.04, and interest had become due and payable to the defendant, according to the terms of sale of the land, to the amount of $413.08, making as the total amount due the defendant, November 1, 1882, including land sold, interest, and account, $1409.07. During the same period the plaintiff paid to the defendant in cash at sundry times, and in labor and services performed, on account, at various times, the sum of $824.75, leaving as the balance due the defendant, November 1, 1882, $585.82. Interest on this sum to September 22, 1883, the date when the plaintiff's bill was filed, is $31.43, making as the amount then due the defendant $617.25. On November 1, 1882, the plaintiff had paid in money and labor $709.07, the amount of the defendant's account for interest and for goods sold and delivered to the plaintiff, and $114.18 of the purchase money for said tracts of land.

"About November 1, 1874, the plaintiff, at the suggestion of the defendant, procured a memorandum-book, and the defendant made certain entries in it, and delivered it to the plaintiff, who always retained possession of it. An exact copy of these entries is set out in the plaintiff's bill.* These entries were made by

---

* This account was headed, "Account of L. W. Daggett and John Burns, land trade, &c." The first item was "Nov. 1, 1874, John Burns, Dr. To house lot, $700." Following this were items of interest and other charges, and also credits. The last items were credits, in January, March, and December, 1881.

the defendant in his own handwriting from time to time. The details of the account are not shown in this book, but the balance as therein stated does not materially differ from the above statement.

" The plaintiff relied upon these entries as a memorandum in writing of the contracts of sale of land. But I was of opinion that it was not sufficient for that purpose.

" The plaintiff was let into possession of said premises when said agreements of sale were made, and has continued in such possession ever since. During said time, the plaintiff has made various repairs in and upon said house, including shingling, at a cost of about $100. Subsequently to April 16, 1881, he built a fence upon two sides of the premises, costing about $25. He set out a few fruit trees and vines, and cleared up and improved a small piece of land somewhat overgrown with bushes.

" The cost of these last two items did not appear, but it was not much. He also paid the taxes upon said premises. On April 16, 1881, the defendant went upon the premises with a surveyor, for the purpose of surveying the premises agreed to be sold to the plaintiff. During the survey a misunderstanding and altercation arose between the plaintiff and defendant, because the plaintiff supposed the surveyor was not running the lines in accordance with the lines agreed upon. The plaintiff told the defendant he would have nothing more to do with the place, and all he wanted was that the defendant should pay him what he owed him. The defendant told him he would do so whenever he would leave the house.

" After the survey had been completed, the plaintiff inquired of the surveyor if the stakes he had put up were the lines, and, upon being informed that they were, said he was satisfied. This conversation was not in presence of the defendant. Soon afterwards the plaintiff built the fence above spoken of, on the lines run out by the surveyor.

" No further payments were made towards the consideration of said sales by the plaintiff after April 16, 1881, and no communication took place between the parties until December 13, 1881, when the defendant built a road through the premises forty feet in width and about eight rods long. The plaintiff objected to the building of the road, and at the same time demanded a deed

of the premises. He did not tender the defendant the balance due him, nor any part of it, but said he could raise the money on mortgage or otherwise, and would pay him in full. He has demanded a deed once or twice since, but has never tendered the defendant any part of the consideration.

"On November 7, 1882, the defendant tendered to the plaintiff, as the amount then due him, $130, and requested him to remove from said premises, and some time after brought a writ of entry to recover the premises.

"The defendant offers in his answer to pay any sum that may be justly due the plaintiff.

"If, upon the foregoing facts, the plaintiff is not entitled to maintain his bill, I find and report there is justly due the plaintiff $114.18, with interest since November 1, 1882; $25 for fence built upon said premises, and $25 for fruit trees, &c.; making $168.18, with interest from November 1, 1882. From this amount should be deducted reasonable compensation for the use and occupation of said premises, either interest upon the balance of the consideration remaining unpaid or rent, and, if rent, I find a reasonable price would be $7 per month.

"The road built by the defendant, hereinbefore referred to, was laid out and accepted by the town of Attleborough as a public way, April 2, 1883.

"This way takes from the premises sold to the plaintiff from twenty-five to thirty rods of land. The plaintiff claimed that it injured the value of the premises $200. I am of opinion that the injury was much less. I have not sufficient evidence before me to determine how much the premises are damaged by the building of said road."

The case was heard on the master's report, and a decree entered dismissing the bill. The plaintiff appealed to the full court.

*J. Brown*, for the plaintiff.

*J. H. Dean*, for the defendant.

W. ALLEN, J. There is no sufficient memorandum in writing, as required by the statute of frauds, Pub. Sts. *c.* 78, § 1, *cl.* 4; and the only question is, whether there has been such part performance of the oral contract by the plaintiff as to entitle him to a decree against the defendant for specific performance.

The only part performance relied upon is the occupation of the premises, and the making of repairs and improvements upon them. These do not of themselves constitute such part performance as to do away with the statute. To have that effect, the occupation of the premises and the expenditures upon them must have been induced by the contract, and in reliance upon its performance, and such that adequate compensation could not be made for them by the defendant except by the conveyance of the premises, so that it would be fraudulent in him to withhold a conveyance, and he would be estopped from setting up the statute of frauds against the plaintiff's demand for a deed. *Glass* v. *Hulbert*, 102 Mass. 24. *Potter* v. *Jacobs*, 111 Mass. 32.

The agreement was for the conveyance of two acres of land and a house for $700, $10 to be paid each month and annual interest on the balance till all should be paid; and the plaintiff was to make necessary repairs on the house and pay the taxes. The agreement was made in 1871, and the plaintiff then went into possession, and continued the occupation, without interruption, until 1881, and in that time spent about $100 in repairs on the house, and set out a few fruit trees and vines, and cleared off bushes, and improved a small piece of land, at slight expense. The master found that a reasonable rent for the premises was $7 a month. Up to April 16, 1881, both parties appear to have been acting under the oral contract, although there seems to have been some misunderstanding as to its terms. The plaintiff had paid to the defendant, besides the taxes and the $100 for repairs on the house, about $550 on the contract debt, $400 of which was for interest and the rest on the principal of $700, and had had the use of the premises, worth, at $7 a month, over $850. Under these circumstances, the defendant went upon the. premises in April, 1881, with a surveyor, for the purpose of surveying the land included in the contract, and a disagreement arose between the parties as to the lines of the land agreed upon. The plaintiff then told the defendant that he would have nothing more to do with the place, and all he wanted was that the defendant should pay him what he owed him; and the defendant told him he would do so whenever the plaintiff would leave the house. The plaintiff made no further payment, and there was no further communication between the

parties, the plaintiff continuing to occupy the premises until December, 1881, when the defendant entered upon the premises and constructed a road through them. The plaintiff then objected to the making of the road, and demanded a deed, but made no tender of payment. After the survey was completed, in April, 1881, the plaintiff expressed himself, but not to the defendant, as satisfied with the lines run, and afterwards built a fence, at a cost of $25. In November, 1882, the defendant tendered to the plaintiff the amount he had paid on the contract above the interest, and requested him to quit the premises.

These facts do not show such a part performance of the contract by the plaintiff as to entitle him to a decree for specific performance. It is enough to refer to the cases of *Glass* v. *Hulbert*, and *Potter* v. *Jacobs, ubi supra.* The principles upon which the acts of a party give him an equitable right to enforce a contract which the statute says shall not be enforced by action, are fully considered in the former case, and practically applied in the latter. In the latter case, the oral contract was made in 1868, by which the defendant agreed to convey a lot of land for $500. The plaintiffs went into possession, cultivated and improved the land, and erected a house upon it, which they occupied. In December, 1870, when the plaintiffs were proposing to place a building upon the land, a difference arose between the parties as to a restriction which formed part of the contract, and it was finally agreed that the defendant should give a deed without the restriction, in consideration of the additional sum of $100, and the plaintiffs proceeded to move the building upon the land, and made expenditures upon the premises to the amount of $1700, and made several payments on account of the purchase money. All this was with the knowledge and consent of the defendant, and, by inference, with the knowledge that it was done by the plaintiffs in expectation of receiving a deed. The defendant, in November, 1869, executed a deed, which was shown to the plaintiffs, and which contained the restriction which the plaintiffs desired removed. About January 1, 1871, one month after the change in the contract doing away with the restriction, the defendant executed a deed and tendered it to the plaintiffs on condition of the payment of the amount claimed by the defendant to be due. The plaintiffs denied that there was as much due

as was claimed by the defendant, and made no tender or payment after January 4, 1871. The amount then due was $244.80, which was materially less than was claimed by the defendant. Within a fortnight after tendering the deed and demanding payment, the defendant refused to make a conveyance on any terms, and commenced legal proceedings against the plaintiffs. Upon these facts, it appeared that the plaintiffs were induced by the defendant to do acts, in reliance upon the performance of the contract, for which there could be no adequate compensation if the contract should not be performed; and the court held that " there was possession taken, accompanied by part payment and such change of position that the purchasers cannot now be restored to their rights if the contract be abandoned. The refusal to complete it is in the nature of a fraud, and the defendant is estopped to set up the statute of frauds in defence."

The facts in the case at bar afford no such conclusion. After the plaintiff had enjoyed the use of the premises for nearly ten years, and had made no improvements of any amount, and expended but $100 for necessary repairs, and had paid but a small portion of the consideration, and in all less than the value of the use and occupation, so far from having done acts for which he could have no redress if the contract were abandoned, it may have been for his advantage that the parties should not be held to the contract. If he could receive back the portion of the principal of the purchase money which he had paid, and be relieved from further payments, he would have received, in the value of the use of the premises, more than double the whole amount he had expended. Whether the conversation of April 16, 1881, was in itself a rescission of the contract is immaterial; in connection with the circumstances, it is conclusive that the plaintiff had not then done acts under the contract for which he could have redress only by carrying out the contract, and the defendant's acquiescence in which would make the defence that the contract was not in writing fraudulent. After that, the plaintiff continued to occupy the premises for a year and a half, but made no payment, or offer of payment, of the consideration, but expended $25 for fencing. When the defendant, eight months after the conversation of April 16, having heard nothing from the plaintiff, entered upon the premises, it is not at

all clear that the act was contrary to an existing verbal contract; but, if it were, it was not such a fraudulent or wrongful violation of it that he would be estopped to set up its invalidity. The subsequent occupation of the premises by the plaintiff for a year, without tendering any part of the consideration, or making any expenditure upon the place, though accompanied with demands for a deed, does not present the conduct of the defendant in a fraudulent aspect, and the tender by him of all that the plaintiff claimed to be due on the rescission of the contract shows that no wrong incapable of compensation was done to the plaintiff.

The facts found by the master, if they do not show that the use and occupation of the premises were full compensation and indemnity to the plaintiff for all that he did upon them, certainly fail to show any equity in him, in consequence of part performance of the verbal contract, sufficient to override and set aside the statute of frauds.                     *Bill dismissed.*