## BLOCK *v.* SHAW.

### Opinion delivered April 23, 1906.

1. SALE—ASSIGNMENT OF FUTURE INTEREST.—The equity rule that a contract for the sale of chattels to be afterwards acquired transfers the beneficial interest in such chattels to the vendee as soon as they are acquired by the vendor is limited to the case of sales of specific articles which, on being acquired by the vendor, can be identified as the very things sold. (Page 514.)

2. SAME—CASE STATED.—Where a dealer in cotton sold a large number of bales of cotton, to be afterwards acquired, to another, and failed after having purchased a large part of the cotton, but without having delivered same to the vendee, the latter will not be entitled in equity to have the contract enforced *pro tanto,* the remedy for the breach of the contract being at law. (Page 515.)

Appeal from Pulaski Chancery Court; *Jesse C. Hart,* Chancellor; reversed.

STATEMENT BY THE COURT.

This was an action in equity by W. K. Shaw against the German National Bank and G. M. Block, trustee in bankruptcy of the George Taylor Commission Company, to enforce an equitable claim of plaintiff to proceeds of certain cotton held by the bank. The chancellor found in favor of plaintiff, and gave judgment accordingly. Block, the trustee in bankruptcy, appealed. The other facts sufficiently appear in the opinion.

*Frank B. Coleman* and *F. H. Sullivan,* for appellant.

This was an executory contract of sale. 20 Ohio, 304; 1 Mechem, Sales, § 41. No title would pass to appellee until the cotton was segregated and delivered, or something done which in law would be treated as equivalent to delivery. 67 Ark. 138; 1 Mechem, Sales, § § 718, 728, 733. The insolvency of the vendor is one of the risks assumed by the vendee in executory contracts of sale. 67 Ark. *supra.* The case made by appellee does not fall within the exceptions to the rule that equity will not enforce specific performance of a sale of personal property. 27 Cal. 451; 115 Mass. 248; 108 Ill. 197. Insolvency, standing alone, is not sufficient to induce a court of equity to grant relief with reference to an executory contract as to personal property. 10 N. Mex. 543; 93 Fed. 74.

*Stewart, Eliot & Williams* and *Moore, Smith & Moore,* for appellee.

A contract for the sale of chattels to be afterwards acquired transfers the beneficial interest in the chattels, as soon as they are acquired, to the vendee. Such is the rule in equity. Benjamin on Sales, § 81; 10 H. L. Cas. 191; Pomeroy's Eq. Jur. (2 Ed.), § 1288, footnote; *Ib.* p. 1980, note. The same rule applies to sales of property to be afterwards acquired by the vendor. 1 Pom. Eq. Jur. § 369; 3 *Ib.* § § 1236, 1288; 2 Story, 630; 30 Ark. 56; 24 Am. & Eng. Enc. Law (2 Ed.), 1043. A contract for the sale of goods to be afterwards acquired, provided they are sufficiently described to be identified, transfers the beneficial interest in them as soon as they are acquired; but it is only the equitable interest which passes, and if, before the buyer acquires the legal property, the seller disposes of the goods to a *bona fide* purchaser without notice, the rights of the buyer are defeated. Tiffany, Sales, 25; authorities *supra.* The goods may be recov-

ered, in such case, from one who takes the legal title with notice of the contract between the seller and the first purchaser. 32 N. Y. Misc. Rep. 386 and cases cited. Contracts for the sale of chattels to be afterwards acquired are regarded as equitable assignments, and as such enforced by the courts of equity. Pom. Eq. Jur. § 1288.

*Frank B. Coleman* and *F. H. Sullivan,* for appellant, in reply.

There can be no relief in equity as to after-acquired chattels, unless the party seeking the relief has paid the consideration. Again, a contract which does not, of itself, identify the chattels, so as to distinguish them from others of its kind, is no more valid to transfer title in equity than at law. 10 H. L. Cas. 191; Tiffany on Sales, 25; Benjamin on Sales (Bennett's Ed.), 86; 2 Lowell, 461. The property must be so described in the contract as to be capable of identification. Authorities *supra,* cited by appellee; 24 Am. & Eng. Enc. Law (2 Ed.), 1043. As to equitable rights to after-acquired chattels, the rights of the transferee are inferior to those of subsequent purchasers and creditors, and a trustee in bankruptcy is accorded the same rights as a creditor to question a claim of this kind. 96 U. S. 486; 171 U. S. 498; 125 Fed. 180; 112 Fed. 308; 115 Fed. 87.

RIDDICK, J., (after stating the facts.) This is an appeal by George M. Block, trustee in bankruptcy of the George Taylor Commission Company, from a judgment rendered by the Pulaski Chancery Court against him and the German National Bank of Little Rock in favor of W. K. Shaw for the sum of $461.84 and for the proceeds of certain cotton held by the bank. The facts, briefly stated, are as follows:

Shaw was a cotton broker of Boston, Massachusetts. The George Taylor Commission Company was also engaged in buying and selling cotton. Its principal office was at St. Louis, Mo.; but it had an agent at Little Rock who bought cotton for the commission company to fill its contracts. In the year 1903 Shaw made contracts with certain manufacturers of cotton goods to furnish them cotton. In order to procure the cotton to fill these contracts, he made an offer to purchase from the George Taylor Commission Company about fifteen hundred bales of cotton of a certain grade and staple, known as long staple cotton, at a price of about 12½ to 13½ cents per pound, to be paid on delivery of

33

cotton. This offer was accepted by the commission company, which agreed to sell Shaw the cotton at the price named. In order to carry out this contract which the commission company had made with Shaw, its agent at Little Rock went into the market there, and from time to time, as he was able to do so, purchased cotton of the grade and staple required by the contract with Shaw. The company borrowed money from the German National Bank of Little Rock to pay for this cotton, and to secure the bank transferred to it the warehouse receipts for the cotton. Three hundred bales of this cotton were shipped to Shaw or to customers of his as directed by him on the contract, but the company failed, and became bankrupt before the other cotton was delivered or shipped to Shaw. At the time the company quit business the bank held warehouse receipts for about 1000 bales of this cotton purchased by the commission company for the purpose of carrying out its contract with Shaw. After selling all but six bales of this cotton, and discharging the debt of the commission company to it, the bank had in its possession a surplus of $461.84, and held bills of lading for the six bales of cotton.

Shaw had paid nothing on his contract, for he was not required to pay until the cotton was delivered. The price of cotton had gone up after his contract of purchase was made with the commission company, and the cotton sold by the bank brought a much higher price than Shaw had contracted to pay for it, and his loss by reason of the failure of the commission company to carry out its contract was probably much greater than the surplus held by the bank after paying its debt.

The question presented by this appeal is whether Shaw or Block, the trustee in bankruptcy for the commission company, is entitled to this money and cotton held by the bank after paying its debt.

There was no delivery of the cotton to Shaw, so as to make him the owner of the legal title thereto; but counsel for Shaw contends that in equity the cotton, so soon as purchased, belonged to Shaw, and that a court of equity will protect this equitable title. They say that, as this particular cotton was bought by the agent of the commission company specially for the purpose of carrying out its contract with Shaw, the case falls within the equity rule that a contract for the sale of chattels to

be afterwards acquired transfers the beneficial interest in such chattels to the vendee so soon as they are acquired by the vendor. Benjamin on Sales, § 81; *Apperson* v. *Moore,* 30 Ark. 56.

It is, no doubt, true, to quote the language of Professor Pomeroy, that "a sale, assignment or mortgage, for a valuable consideration, of chattels or other personal property to be acquired at a future time operates as an equitable assignment, and vests an equitable ownership of the articles in the purchaser or mortgagee as soon as they are acquired by the vendor or mortgagor, without any further act on the part of either; and this ownership a court of equity will protect and maintain at the suit of the equitable assignee." Pomeroy, Equity, § 1288; *Holroyd* v. *Marshall,* 10 H. L. Cases, 191; *Apperson* v. *Moore,* 30 Ark. 56; *Bett* v. *Carter,* 2 Lowell (U. S.), 458; *Morrell* v. *Noyes,* 56 Me. 458. But to have this effect there must be a sale or a contract for a sale of certain specific property. This question was discussed in *Official Receivers,* 13 Appeal Cases, Law Rep. 1888, 533. In that case the question was whether the mortgage of a stock of goods and all book debts which during the continuance of the security should become due and owing to the mortgagor was void as to the future book debts on account of vagueness. The Court of Appeals held that the description was too vague and general, and that no title passed, but the House of Lords reversed this judgment. The judges said, in substance, that, while it might be uncertain when the mortgage was executed what book debts, if any, would come into existence, yet, as soon as these debts were acquired, their identification was complete, and the assignee for value took in equity the same interest as if the debt had been in existence at the time the assignment was made.

As bearing on the case before us, we wish to call special attention to the language of Lord Watson, who delivered an able opinion in that case. "There is," he said, "but one condition which must be fulfilled in order to make the assignee's right attach to a future chose in action, which is that, on its coming into existence, it shall answer the description in the assignment, or, in other words, that it shall be capable of being identified as the thing or as one of the very things assigned."

Now, in this case plaintiff shows that he had a contract with the George. Taylor Commission Company to sell him a certain

number of bales of cotton of a particular grade and staple at a price named, but no particular cotton was sold or agreed to be sold. The fact that the commission company or its agent afterwards bought certain cotton of the kind described in the contract, and bought it furthermore with the intention afterwards to deliver it to the plaintiff in performance of their contract, is a matter of no moment, for it was never delivered. If the evidence showed that this cotton was kept by the commission company separate from the other cotton owned by it, this still was not a delivery to Shaw, and the title to this cotton, both legal and equitable, remained in the company up to the time of its failure. The company could, at any time before its failure, have changed its mind, and could have disposed of this cotton in any way it saw. fit. It could have delivered other cotton of the same kind to plaintiff in fulfillment of its contract, and he would have had no ground of complaint, for the company, as before stated, never agreed to deliver any particular cotton, but only cotton of a certain grade and staple. It can not be said that this cotton is the identical cotton sold to Shaw or agreed to be sold to him, for, as before stated, his contract calls for no particular cotton, and the facts do not bring this case within the equitable rule referred to.

Plaintiff has neither bought any particular cotton from the company, nor paid anything to the company on its contract for cotton, and there is no reason why a court of equity should interfere in his behalf to give him a preference over the other creditors of this bankrupt company. If he has suffered loss by the failure of the company to carry out its contract, he has his remedy at law, and the insolvency of the company does not change the rule.

If he had purchased or contracted to purchase all the cotton of a certain grade and staple bought by the agent of the commission company at Little Rock during the fall of 1903, and to enable the company to carry out its contract had advanced a large part of the purchase price, a different question would have been presented, for this would have been a purchase for value of certain specific cotton, and not a contract for the purchase of a quantity of cotton of a certain kind only, upon which nothing has been paid or advanced.

In its last analysis this is nothing more than an action for

specific performance of an executory contract for the sale of cotton, an article of commerce which can at all times be bought in the market. Courts of equity do not enforce such contracts, and the remedy for their breach, as before stated, is at law.

In our opinion plaintiff fails to make out a case for the interposition of a court of equity. The judgment in favor of plaintiff is therefore reversed, and the cause remanded, with an order to enter a decree in favor of the appellant, and for other proceedings.