SUGAR BEETS PRODUCT CO. v. LYONS BEET SUGAR REFINING CO.

(Circuit Court, W. D. New York. April 28, 1908.)

No. 315.

1. SPECIFIC PERFORMANCE—NATURE OF CONTRACT—ADEQUATE REMEDY AT LAW —PAYMENT OF GOODS.

Complainant's assignor constructed and delivered to defendant a beet pulp drier under contract providing for payment of the price with dried pulp at $12 per ton. It was also agreed that, after the price was paid, defendant should sell the dried pulp to complainant's assignor for $13 a ton for three years, and that it should not sell to any other except farmers until the contract was performed; the ownership of the drier, until paid for, being reserved to complainant's assignor. A bill for specific performance alleged that defendant had sold pulp at higher prices than $12 per ton to others during the contract period, and thus prevented complainant from fulfilling a contract with another for the sale of all the pulp manufactured at defendant's factory, and that defendant had failed to pay the price of the drier, claiming that it was structurally defective when the faults were due to defendant's improper operation thereof. Held, that such contract did not operate to transfer the title to the pulp until delivered to complainant thereunder and that, as complainant had an adequate remedy at law, it was therefore not entitled to specific performance.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Specific Performance, §§ 5–7.]

2. SAME.

An agreement to pay for an article in the products thereof is enforceable by the recovery of money, and not of such specific products.

3. SALES—CONDITIONAL SALES—BREACH OF CONTRACT BY BUYER—REMEDIES OF SELLER.

Where a contract was made to exchange a beet pulp drier for products to be manufactured thereby, defendant having subsequently refused to deliver such products to complainant, the latter, having retained title to the drier until paid for, was entitled to sue at law to recover possession thereof and damages for defendant's breach of contract, or for the balance of the price unpaid in money.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Sales, §§ 1418–1438.]

4. DAMAGES—ELEMENTS—LOSS OF PROFITS.

Loss of anticipated profits is a proper element of damages for breach of contract.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Damages, §§ 74–78.]

5. SPECIFIC PERFORMANCE—BILL—CONSTRUCTION.

Where, in a suit to enforce specific performance of a contract to purchase a pulp drier and to pay therefor in pulp at $12 per ton, with leave to sell pulp to farmers, the bill alleged that all defendant's dried pulp was shipped on its own account direct to the L. Milling Co., and that defendant had refused to deliver pulp to complainant, it impliedly negatived the claim that defendant sold pulp to farmers at $13 a ton, for which complainant was entitled to an accounting.

6. DISCOVERY—EQUITY JURISDICTION.

Jurisdiction in equity was not sustainable, on the ground that complainant was entitled to a discovery, where any testimony under defendant's control which complainant might deem necessary to substantiate its cause of action was obtainable by an examination of defendant's officers, books, and records in a suit at law.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 16, Discovery, § 27.]

In Equity. On demurrer to bill.

Bashford, Aylward & Spensley and Gibbons & Pottle, for complainant.

Lewis & Lewis and Charles P. Williams, for defendant.

HAZEL, District Judge. The bill is for specific performance of a written contract providing for the construction and delivery by complainant's assignor to the defendant of a pulp drier with a daily capacity to dry all pulp from 500 tons of beets in 24 hours, and for payment of the purchase price of $34,500 with dried pulp at the price of $12 per ton. It was agreed that after the purchase price was paid the defendant would sell the dried pulp to the complainant's assignor for $13 per ton for a period of three years, and that it would not sell any dried pulp to any other person, except to farmers, until the contract was performed. The ownership of the drier until it was paid for by the defendant was reserved to complainant's assignor. The contract contained other provisions; but they are not of material importance, and need not be set forth. The bill alleges the performance of the agreement on the part of the complainant, but avers that the defendant, after complying with the terms of the contract to the extent of drying and delivering pulp under the contract amounting to $7,412.84, has since failed of performance. It is further alleged that the defendant continues to use the drier, claims to own it, and has sold dried pulp at a higher price than $12 per ton; that at the time of making the contract the complainant had entered into an agreement, of which the defendant had knowledge, with the Larrowe Milling Company for the sale to the latter of all dried pulp manufactured in the factory of the defendant, and as a reason for not fulfilling the contract the defendant pretends and fraudulently claims that the drier machine and appliances were materially defective, thereby preventing fulfillment of the conditions of the contract. The bill points out that the defendant neglected to properly operate its diffusion batteries, an appurtenance of the drier, and failed to supply necessary presses and allows its beets to decay; that the complainant has offered to make necessary repairs upon the drier, but the defendant refuses to permit it to do so, insisting that the drier is defectively constructed. An accounting is demanded, and that a receiver be appointed by the court to conduct the business during the pendency of the action, to the end that the defendant be compelled to deliver dried pulp to complainant at the price specified in the contract. The defendant demurred to the bill on the ground that it lacks equity, in that there exists a plain, adequate, and complete remedy at law.

Complainant's position is succinctly stated in its brief as follows:

"The defendant is in possession, and using for its own benefit the property of the complainant, converting a worthless by-product of its factory into a marketable commodity of great value. Through its own misconduct and fraud it has sought to prevent the successful operation of the drier during the experimental stage, and then sets up the consequence of its own wrongful acts as a justification for its refusal to make delivery of the dried pulp, after it has increased in value, in payment of the purchase price and for the ensuing three years. The defendant sustains toward the complainant a fiduciary re-

lation with respect to the drier and its operation, the product manufactured thereby, and the proceeds of the sale of the pulp. An action at law could not afford any adequate release if the remedy had not been surrounded by doubt and difficulty, by the wrongful acts of the defendant. The complainant has properly invoked the jurisdiction of a court of equity to protect and enforce its rights under the contract."

A careful persual of the bill satisfies me that the relations between the parties were not of a trust or fiduciary character, and in an action at law the complainant could obtain complete relief. Concededly the contract was made in the state of New York, where the defendant resides, and where it was to have been fully performed. The remedial rights, therefore, of the parties, are controlled by the common law of this state. Although the title of ownership to the machinery and appliances remained in Hapke, complainant's assignor, the title of the dried pulp in fact was not in the complainant. The agreement that the apparatus should be paid for "with dried pulp as fast as made, at a price of $12 per ton, until the drier is paid for," did not as a matter of law, in my estimation, operate as a transfer of the title of the manufactured article. The parties to the contract did not become associated as partners in the business of drying pulp. Their relationship arose from the contract, on the one hand to construct a driver according to the specifications, and on the other to pay for the same in dried pulp at a specified price per ton. I think the complainant must look to the defendant for the money, instead of the specific article with which it was to have been paid. Authorities abound in this state upholding the principle that an agreement to pay in goods and chattels is enforceable by the recovery of money, and not of the specific article. Pinney v. Gleason, 5 Wend. 394, 21 Am. Dec. 223; Thomas v. Murray, 32 N. Y. 615; New York News Pub. Co. v. The National Steamship Co., 148 N. Y. 39, 42 N. E. 514; 1 Sedgwick on Damages (8th Ed.) 280; Blackmer v. Holmes, 13 Wkly. Dig. 424, affirmed 98 N. Y. 622; Herrick v. Carter, 56 Barb. 41; Fletcher v. Derrickson, 3 Bosw. 181.

As to whether the plaintiff in an action at law would be entitled to recover the actual value of the dried pulp at the time it was to have been delivered, or the purchase price of the drier, is a question that need not be here decided. While not disputing the proposition that the specific performance of a contract relating to articles of merchandise may be enforced in equity, yet in my opinion the allegations of the bill do not indicate that any damages claimed to have been sustained by the complainant cannot with reasonable certainty be ascertained in an action at law to recover on breach of contract; nor is it apparent that there exists any insurmountable barrier or difficulty to giving the full measure of redress to which the complainant is legally entitled. It is not apparent that irreparable injury will result from the failure of the defendant to specifically perform the contract. It is not claimed that dried pulp cannot be obtained on the market and that the complainant is prevented from keeping its contract to supply others.

Concededly an action at law may be brought to recover possession of the drier, or for breach of contract, or for the balance of the pur-

chase price unpaid. That a rescission of the contract would be necessary before instituting the first-mentioned remedy, or that the amount paid to apply on the purchase price would have to be refunded, or that the right to future deliveries of dried pulp may be deemed uncertain, are not sufficient reasons, in the circumstances narrated in the bill, for invoking the power of a court of equity. It has frequently been held that the loss of anticipated profits is a proper element of damages for breach of contract (Wakeman v. Wheeler & Wilson Co., 101 N. Y. 205, 4 N. E. 264, 54 Am. Rep. 676; Allen v. Field, 130 Fed. 641, 65 C. C. A. 19); and, even assuming the damages recoverable to be uncertain or difficult of ascertainment, no sufficient reason is advanced in the light of the authorities to justify holding that the nature of the bill indicates inadequate or incomplete relief in an action at law.

It is suggested that, as the contract permitted the defendant to sell dried pulp to farmers at $13 or more per ton until the purchase price of the drier was fully paid and at $14 or more per ton thereafter, which said amounts were to inure to the complainant every month, an accounting in equity of such payments is the proper remedy. This contention, however, ignores the gist of the bill, which manifestly is to compel the defendant to perform a contract which it has elected to break. Moreover, as contended by the defendant, the bill impliedly negatives the assertion that any pulp was sold by the defendant to farmers at $13 per ton; for it is therein alleged that all the dried pulp manufactured in the factory of the defendant was shipped on its own account direct to the Larrowe Milling Company.

I do not think the complainant is entitled to discovery. Any testimony under the control of the defendant which the complainant may deem necessary to substantiate its cause of action is obtainable by an examination of the officers of the defendant corporation, or its books and records, in the same manner as if the suit continued in equity. See Colgate v. Compagnie Francaise du Telegraphe de Paris à N. Y. (C. C.) 23 Fed. 82; sections 724, 862, 914, Rev. St. (U. S. Comp. St. 1901, pp. 583, 661, 684); Cameron Lumber Co. v. Droney (C. C.) 132 Fed. 304; U. S. v. Bitter Root Development Co., 200 U. S. 451, 26 Sup. Ct. 318, 50 L. Ed. 550.

I have examined the averments of the bill regarding the asserted fraud of the defendant, or its pretense that the drier was defective for the purpose of wrongfully avoiding the contract; but, as hereinbefore stated, the action is brought primarily to compel the payment of the purchase price of the drier in pulp, and, following the principles of the adjudications hereinbefore cited, such an action, under the circumstances set forth in the bill, is not maintainable, and no basis for the exercise of equitable relief is shown.

The demurrer is sustained, with costs, with leave to the complainant to amend within 20 days.