## FLECHS v. RICHIE.

No. 11404—Opinion Filed June 19, 1923.

**1. Frauds, Statute Of—Sale of Real Estate.**
Section 941, Rev. Laws of Okla. 1910, provides as follows: "The following contracts are invalid unless the same, or some note or memorandum thereof, be in writing and

subscribed by the party to be charged or by his agent. * * * Fifth. An agreement for * * *. the sale of real property, or of an interest therein. * * *"

## 2. Same—Mere Possession Under Oral Contract—Specific Performance.

Where an oral agreement is entered into, whereby A. agrees to purchase lands from B. and enters into possession, and does not commit irreparable waste or so alter conditions that the parties may be placed in their original positions, mere possession unaccompanied by any partial payment is not sufficient to take the transaction out of the statute of frauds relating to an interest in lands and the court will not decree specific performance of such oral contract.

## 3. Same—Separable Contracts—Oral Agreement to Purchase Stock of Goods.

Where A. enters into an oral contract for the purchase of lands from B. for a fixed, definite, and certain sum, and in the same oral contract A. agrees to purchase a stock of goods, wares, and merchandise at the invoice price thereof, the court will not decree specific performance of the contract for the sale of such goods, wares, and merchandise.

## 4. Same—Equity Rules.

He who invokes equity must do equity, and where one desiring to enforce specific performance in equity has failed to comply with the material terms of his contract, and the transaction is tainted with fraud and deception, equity will not decree such specific performance.

## 5. Interest on Judgments.

Section 1008, Rev. Laws of Okla. 1910, provides: "All judgments of courts of record and justices of the peace shall bear interest from the day on which they are rendered at the rate of six per cent. per annum."

(Syllabus by Ruth, C.)
Commissioners' Opinion, Division No. 3.

Error from Superior Court, Okmulgee County; H. R. Christopher, Judge.

Action by M. L. Richie against H. A. Flechs for specific performance. Judgment for plaintiff, and defendant brings error. Reversed and remanded, with instructions.

R. J. Bollman, for plaintiff in error.

Foster & Cooper, for defendant in error.

Opinion by RUTH, C, This action was filed in the superior court for Okmulgee county, by M. L. Richie against H. A. Flechs for specific performance of an oral contract for the purchase of certain lands at a stipulated price, and for a stock of goods, wares, and merchandise, at the invoice price to be thereafter ascertained.

The parties herein will be considered as they appeared below.

The plaintiff in his petition alleges that on December 30, 1918, he was the owner of certain lots in Bartlett, Okla., and was also owner and in possession of a stock of goods, wares, and merchandise kept in a store room on said lots, and was engaged in conducting a general retail store in said building.

That on December 30, 1918, the defendant Flechs entered into an oral contract with Richie, whereby Flechs agreed to purchase, and Richie agreed to sell to Flechs the said lands for the sum of $750, and Richie further agreed to sell to Flechs the said stock of goods at the invoiced cost price, and the invoiced price was found to be $1,288.

That defendant deposited his check for $2,018 in the Citizens' National Bank of Okmulgee, and plaintiff executed his warranty deed to said lands, and a bill of sale for the said goods, wares, and merchandise, and all instruments were placed in escrow in said bank, to be delivered to the respective parties within a reasonable time after an abstract of title to said lands had been delivered.

That defendant went into possession on December 31, 1918, and on January 18, 1919, plaintiff delivered the abstract of title to the bank, and on January 28, 1919, demanded defendant's check, which delivery was refused by the bank on order of the defendant.

Plaintiff further alleges that defendant abandoned the premises on January 15, 1919. Plaintiff thereupon prays that defendant be required to specifically perform his contract and pay plaintiff the sum of $2,018; that a receiver be appointed pending the litigation, and for general relief.

Thereafter the defendant filed his demurrer, and alleged that the facts stated did not constitute a cause of action; that plaintiff had a complete and adequate remedy at law, and that the petition did not state facts sufficient to entitle plaintiff to relief in equity.

The demurrer was, on the 22nd day of April, 1919, overruled, and exception given defendant, who, on June 4, 1919, filed his answer, in which he admits the oral contract for $750 for the lands, and the invoice price of the goods, admits going into possession, and admits he vacated the premises on January 15, 1919.

For further answer defendant pleads the statute of frauds; that the contract was

wholly oral; that plaintiff has a complete and adequate remedy at law, and further pleads a failure of consideration in that the plaintiff agreed to pay all outstanding bills on or before January 14, 1919, and breached his contract in that on January 15, 1919, there were outstanding bills as follows: Muskogee Wholesale Grocery Company $600; Chamberlain Medicine Company, $29.30; and telephone bills of between $50 and $75.

Defendant further alleges fraud and misrepresentations by the plaintiff in that plaintiff represented to defendant that the store was doing an average business of $2,000 per month, and that the building and stock was insured for $1,000 to $1,500 for a period of three years from June 1, 1918. That the plaintiff knew that these representations were false, and defendant alleges he relied wholly upon these representations, and was induced to enter into the said oral contract by such false representations; that he would not have entered into the said oral contract or considered purchasing the property or goods, had he known the statements to be false.

Defendant then alleges he expended $686.36 in increasing the stock of goods; that his sales up to January 15, 1919, a period of 16 days, aggregated, but $475.29, and upon discovering the fraud and deception, and that plaintiff had not paid outstanding debts, he notified the plaintiff that he did then and there rescind the contract, and delivered the keys to the plaintiff, and offered to give plaintiff the additional stock purchased by defendant, amounting to $194.07 after deducting the $475.29, being the receipts for the 16 days, to which defendant filed his reply.

The cause came on for trial on October 30, 1919, and in the examination the plaintiff, Richie, admits he told Flechs the store was doing a business of $2,000 per month; that the goods were not insured, but the house was insured for $700; that he "packed the keys back to their (Flechs') house and left them on the 16th of January, 1919"; that in conducting his business he kept no books of account; had no records of sales except his pass book showing the amount of money deposited in the bank.

On cross-examination by counsel for defendant, Foster, we find the following:

"Q. Now, then, isn't it true, Mr. Richie, that on pay-day when some of your customers would come in, they would hand you a check covering their full month's wages, say, $150, and you would give them change for the difference between the amount of their account and the amount of that check?

A. Sure. Q. Then, if I understand you, if one of your customers gave you a check for $150, and his account was $25, you gave him $125 back. A. Sure, I would give him the difference back. Q. Yet, when you made your deposits here, you put in that $150 check in this total, didn't you? A. Sure. Q. In other words, that showed a $150 deposit, didn't it? A. Yes, sir." (The plaintiff also admitted that in order to have change on hand at the time when the employes of the various oil companies came in with their pay checks, plaintiff got money from his brother and also, in one or two instances, borrowed from his son-in-law.) "Q. When you approached Mr. Flechs on the matter of selling him that store, what did you give as your reason for wanting to sell? By Mr. Foster: I think that is incompetent. By the Court: Go ahead and let's get through. A. I don't remember what I did tell him was my reason. Q. That was a pretty good business, two thousand a month? A. Fairly good business for that country. Q. What was your reason for selling? A. Didn't like the grocery business. Q. Didn't you tell him you wanted to get out of the grocery business and go on a farm? A. Yes. Q. You run a store at Young's Town now, don't you? A. No, sir. Q. Don't you own a store in Young's Town? A. Oh, I sold out there, I don't remember the dates, about six or eight weeks ago. Q. Six or eight weeks ago? A. Yes, sir; something like that. Q. When did you buy that store? A. When did I buy it? Q. Yes. A. I didn't buy it, went up there, and built from the ground up, I never did buy nothing but my material. Q. When was that? A. Last March—February or March. Q. February or March? A. Yes, sir. Q. Right after you sold out to Mr. Flechs? A. Right away."

The plaintiff then testifies that he paid all outstanding bills by check but couldn't find the canceled check; that the house was insured but he couldn't find the policy and did not appear to know what company carried the risk or what agent wrote the policy, and plaintiff further testifies that if Flechs had not taken the keys back "he would have licked him in a minute."

A portion of the uncontradicted testimony of the defendant is as follows:

"That on January 14, plaintiff came to defendant's house and notified him that plaintiff was ready to close the deal and asked defendant to meet him the next day at the Citizens' National Bank in Okmulgee for the purpose of closing up the transaction."

Accordingly, plaintiff and defendant met at the bank in Okmulgee on January 15. As to what happened there, the defendant stated:

"Q. Did you ask Mr. Richie if these bills had been paid? A. Yes, sir. Q. What did

he say? A. He said no, he hadn't paid them. I asked him why— Q. Did he want you to turn the money over? A. Yes, sir; he asked the banker to turn it over. Q. Did you ask him if the Muskogee Wholesale Company's bill had been paid? A. Yes, sir. Q. What did he say? A. No, why be in such a sweat about the bills being paid? Q. What did you tell him then? A. 'If that was the case, I didn't want to have anything further to do with the deal, I would call it off.' Q. Did you tell him the business was less than half what he represented it had been? A. Yes, sir. Q. Did he present to you or to the bank that insurance policy, or promise to deliver it? A. No, sir. Q. Did he ever present that insurance policy? A. No, sir. Q. Has he ever at any time since filing that suit tendered to you that insurance policy? A. No, sir."

Further testimony by defendant was as follows:

"Q. Did you ever talk with the Muskogee Wholesale Grocery Company in regard to any bills they might have against Mr. Richie? A. Yes, sir. Q. What did they tell you? A. They had some bills that wasn't paid. Q. How much, did they say? How much did he owe? A. At that time between five and six hundred dollars. Q. Between five and six hundred dollars? A. Yes, sir. Q. The day you and Mr. Richie went to Okmulgee, did you ask him if he paid that bill? A. Yes, sir. Q. What did he say? A. He said no."

The defendant then offered to show by his own books of account that he had secured some 15 new white customers, and some negroes who had never before dealt at this store, and had retained all of Richie's customers, and that the total receipts for the 16 days the defendant was in possession were but $475, which evidence was by the court excluded, and defendant allowed an exception.

The foregoing comprises all the testimony necessary to be set out, and upon the conclusion of the evidence the court made certain findings of fact, to wit:

"That the contract was oral; that the agreed price of the real property was $750, and the stock was to be taken at the invoice price; that the defendant took possession as alleged; that the check and deed were deposited as alleged; that on the 18th day of January, 1919, plaintiff deposited an abstract of title to the lands with the bank, and on January 29, 1919, plaintiff demanded defendant's check which was refused; that no fraud had been perpetrated and plaintiff had complied fully with all the terms and conditions of this contract."

—and the court then makes the following conclusion of law:

"The court therefore concludes as a matter of law, that the oral contract sued upon in this case is an enforceable contract, the same having been taken out of the statute of frauds by reason of the defendant going into possession of said property, the court deeming said possession to be a sufficient part performance of said oral contract, under the law, to take said contract out of the statute and to entitle the plaintiff to specific performance.

"It is therefore the judgment and decree of the court that the plaintiff recover from the defendant the sum of $2,018 with interest at 8 per cent. per annum from the 28th day of January, 1919, and costs of suit, and that plaintiff have a lien upon the property described in said petition to secure the payment of same." (C. M. 166-67-68-69.)

"H. R. Christopher,
"Judge of the Superior Court."

To which exceptions were duly taken.

The plaintiff in error, defendant below, in a very well considered and exhaustive brief presents the following questions for this court's determination: Did the court err in overruling the defendant's demurrer, for that the petition alleges the contract was for the sale of lands, was wholly oral and within the statute of frauds? We think the court did so err.

Section 941, Revised Laws of Oklahoma 1910, is as follows:

"The following contracts are invalid unless the same or some note or memorandum thereof be in writing and subscribed by the party to be charged or by its agent. * * * Fifth. An agreement for the sale of real property or of an interest therein."

The petition alleges, and the evidence discloses, that the contract was for the sale of land at an agreed price of $750, and that the defendant took possession; nowhere is it alleged to show that part payment was ever made, or that waste was committed to the irreparable injury of the plaintiff.

While this court has not been called upon to pass upon a precisely similar question, the question of specific performance is not a new or novel one, and this court has held, in Levy v. Yarbrough et al., 41 Okla. 16, 136 Pac. 1120:

"A parol contract for the sale of lands will be enforced by the courts where the vendee has paid the purchase price, and taken possession, in good faith, of the premises with the knowledge and consent of the owner, and has made permanent improvements thereon. But the mere acceptance of the purchase price under an oral contract is

not of itself sufficient to take the sale out of the statute of frauds."

It will thus be seen the trend of the court's mind, and if the payment of the purchase price is not sufficient, then something in addition thereto, as indicated in the first part of the syllabi, is necessary, to wit, the paying of the purchase price and the taking possession.

In Bowker v. Linton et al., 69 Oklahoma, 172 Pac. 442, this court held:

"Taking possession in pursuance of a contract, together with full or part payment of the purchase price, is a sufficient part performance; the amount of the partial payment being immaterial."

Harris et al. v. Arthur, 36 Okla. 33, 127 Pac. 695, states:

"Where suit is brought on a parol contract for the sale of an interest in land, proof that the owner executed a deed thereto and notified the purchaser thereof, is not sufficient to take the contract out of the operation of the statute of frauds."

While it is true that in some very rare cases some of the courts have held that the taking possession of the land by the vendee under an oral contract for the sale of such land was sufficient to take it out of the operation of the statute of frauds, the preponderance of authorities hold that more than mere possession is necessary. It would serve no good purpose to cite the numerous authorities so holding, but reference to the following cases will show the almost universal trend of the courts. Wisconsin Railway Company v. McKenna (Mich.) 102 N. W. 281:

"The only thing that has been done by the complainant was to take possession in expectation of performance and expend a small sum upon the land, and to make a deposit with a common agent of the consideration. * * * The only question left is whether equity may treat the possession given as such part performance as to justify specific performance. * * * The mere putting a vendee in possession is not sufficient to give a right to specific performance."

To the same effect are Pearson v. Gardner, 202 Mich. 360, 168 N. W. 485; Kelsey v. McDonald, 76 Mich. 188, 42 N. W. 1103; Cobb v. Johnson (Tex.) 108 S. W. 811; Bringhurst v. Texas Company (Tex. Civ. App.) 87 S. W. 893; Terry v. Craft (Tex. Civ. App.) 87 S. W. 844; Pitts v. Kennedy (Tex. Civ. App.) 177 S. W. 1016.

In Bennett v. Dyer (Me.) 35 Atl. 1004, the defendant entered into possession and plowed a driving park upon the land. The court denied specific performance upon the ground that the plaintiff's remedy at law would afford full and just compensation, and there is an unbroken line of decisions from the state of Maine where the case originated to the same effect.

The rule is equally well settled in the state of Mississippi. McGuire v. Stevens, 42 Miss. 724, 2 Am. Rep. 649; Fisher v. Kuhn, 54 Miss. 480.

In Wright v. Raftree, 181 Ill. 464, 54 N. E. 998, the plaintiff went into possession, filled in a depression in the land, and built a drain and sidewalk, yet the court held that his possession and the making of such improvements were not sufficient to exempt the contract from the statute of frauds. In rendering the opinion of the court, Judge Magruder states:

"We have frequently decided that an oral sale of real estate may be taken out of the statute of frauds by the payment of the purchase money; being let into possession and the making of lasting and valuable improvements. * * * While the cases may not all go to the length of requiring all of these acts to constitute such a part performance of the contract as to require a decree for the specific execution of the contract, still we are aware of no well considered case which has dispensed with the payment of the purchase money. This is regarded as essential to take a case out of the operation of the statute."

In Barnes v. Teague, 54 N. C. 277, 62 Am. Dec. 200, the Chief Justice, in rendering the opinion, stated that the North Carolina court refused to accept the doctrine that putting the purchaser into possession would take the case out of the statute. Hendly v. The Loan Company, 43 S. E. 191 (Va.); Wright v. Pucket, 22 Gratton, 374 (Va.); Venable v. Stamper 45 S. E. 738 (Va.); Workman v. Guthrie, 29 Pa. St. 495, 72 Am. Dec. 654; Ackerman v. Fisher, 57 Pa. St. 457; Poorman v. Kilgore, 26 Pa. St. 365, 67 Am. Dec. 524; Ballard v. Ward, 89 Pa. 358; Meyers' Appeal, 105 Pa. 432; Burns v. Daggett, 141 Mass. 368; 6 N. E. 727; Goodloe v. Goodloe (Tenn.) 92 S. W. 767.

In the case of Glass v. Hulbert, 102 Mass. 24, 3 Am. Rep. 418, in referring to those jurisdictions where possession alone was deemed a sufficient part performance, the court says:

"If it were now open to settle the rule anew, we cannot doubt that it would be limited to possession accompanied with or followed by such change of position of the purchaser as would subject him to loss for which he could not otherwise have adequate

compensation or other redress; and that mere change of possession would not be held to take a case out of the statute."

It is well settled in Kentucky that a verbal contract for the sale of land could not be enforced even where the vendor had put the purchaser in possession. Dean v. Cassidy, 88 Ky. 572, 11 S. W. 601; Fite v. Orr, 8 Ky. L. Rep. 349, 1 S. W. 582.

The Supreme Court of the District of Columbia said in Purcell v. Coleman, 6 Dist. of Columbia, 59, it was brought to the conclusion that the correct interpretation of the rule as to part performance, obtained from a comparison of all the authorities, was this, that delivery of possession under a parol contract for the sale of land would not be sufficient to take the case out of the statute, although delivery of possession united with payment or expenditures in making improvements would be sufficient. Other cases sustaining this rule are as follows: Price v. Lloyd (Utah) 86 Pac. 767; Thompson v. Ray, 92 Ga. 285, 18 S. E. 59; Cochran v. Ward, 5 Ind. App. 89, 31 N. E. 581.

Another question presented to the court by the pleadings and the brief, is, Did the court err in decreeing specific performance of contract for the sale of goods, wares, and merchandise? We think the court did so err. True it is that in some isolated cases courts have laid down the rule that where in an oral contract for the sale of real property, chattels are so intermingled and interwoven as to make it practically impossible to segregate them and attach value to the one without the other under the peculiar circumstances or conditions of the particular case, courts of equity once having attached, will determine all questions for the purpose of doing substantial justice and avoiding a multiplicity of suits, but in the instant case such a condition does not confront us. The oral contract between the plaintiff and the defendant, as is admitted by both parties, provided specifically for the payment of $750 for the real property in question, and no price whatsoever was set on the stock of goods, wares, and merchandise, but the same would be purchased at the invoice cost price which was subsequently ascertained. The contract was therefore not only divisible, but was by the plaintiff himself divided into separate items for separate sums.

It is true that courts have held, and properly so, that where the specific chattel contracted for is desired by the plaintiff, and if his reason for desiring it or the circumstances of the case are such that money

damages would not be an adequate compensation to him for its loss, equity will decree its delivery to him, or if the chattel may have a specific value because of a sentimental interest in it a pretium affectionis—the court will decree specific performance, but where the personal property consists of a stock of merchandise that may be easily duplicated and has a fixed market value, equity will not decree specific performance, and the plaintiff cannot be heard to say that a stock of groceries, patent medicines, and kindred articles has any sentimental value and could not be duplicated, or that he had not a plain, adequate, and complete remedy at law for the recovery of the invoice price of the articles.

"As a general rule specific performance is not decreed where the subject-matter of the contract is personal property; since the compensation which would be recovered in an action at law is deemed to be an adequate remedy for the breach of the contract. In the case of ordinary chattels, the recovery of damages calculated upon the market price of the goods, places the purchaser in as advantageous a position as would a decree in equity; inasmuch as, with the damages, he may purchase the same quantity of like goods. A court of equity therefore will not, unless there is some special reason, specifically enforce a contract for the sale of ordinary articles of commerce." 36 Cyc. 554.

Block v. Shaw, 78 Ark. 511, 95 S. W. 806; Collins v. Karatopsky, 36 Ark. 316; Senter v. Davis, 38 Cal. 450; McGarvey v. Hall, 23 Cal. 140; Grape Creek Coal Company v. Spellman, 39 Ill. App. 630; Harle v. Brening, 131 N. Y. App. Div. 742, 116 N. Y. Supp. 51; Phillips v. Berger, 2 Barb. (N. Y.) 608; Bernier v. Griscom-Spencer Company, 161 Fed. 438; Sugar Beets Product Company v. Lyons Beet Sugar Refining Company, 161 Fed. 215; Kane v. Luckman, 131 Fed. 609; Fleishman v. Woods, 135 Cal. 256, 67 Pac. 276; Krouse v. Woodward, 110 Cal. 638, 42 Pac. 1084.

The rules of equity, ancient as the courts of chancery themselves, require that he who comes into a court of equity must come with clean hands, and he who invokes equity must do equity. Applying these rules the court cannot say that the hands of the plaintiff were immaculately clean, as the evidence discloses, by his own admissions, that he kept no books of account, nor list of customers, to which or to whom the defendant might have referred for the purpose of ascertaining the truth of the plaintiff's statement that he was doing a business of $2,000 per month, but refers the defendant and the

court to the entries in his pass book at the bank, showing aggregate deposits of $2,000 per month, yet in the same breath he admits that if a man came in with a check for $150, and owed a grocery bill of $25 the plaintiff would borrow the difference from his brother or his son-in-law, give the customer the difference in cash and the $125 excess would appear as a deposit as of business done for that month. and in no instance do we find where he furnished, or attempted to furnish, the defendant with any record of what his withdrawals from the bank amounted to in the payment of these loans.

Courts are presumed to have some knowledge of business, certainly the ordinary modes or methods of conducting the common affairs of life, and while there is a difference of opinion between plaintiff and defendant as to the amount of insurance carried, and upon what it was carried, it does appear to the court that if the plaintiff was carrying $700 insurance on the building, as he admits he told the defendant he was doing, that even in the event of his policy being lost or mislaid, he certainly would have been in a position to at least have known what company he was carrying the insurance in, and what agent, if any, wrote the policy, but nothing of this character appears in the record in this case.

The attitude of the plaintiff toward the defendant, carryng much force with this court, is shown by the testimony of the plaintiff, wherein he admits that he was to pay all outstanding debts up until December 30, 1918, but that on January 14, 1919, he notified the defendant that he was ready to close the deal, and upon the defendant appearing at the back to close the deal, and asking plaintiff if the debts had been paid, his reply was, "No, why be in such a sweat about the bills being paid?" Surely the defendant had a right to have these bills paid before final settlement was made, and in view of all the circumstances, this court is not prepared to say that the plaintiff in invoking equity was prepared to do equity.

It appears further from the record that the court in awarding judgment for the plaintiff decreed that the judgment should carry interest at the rate of eight per cent. per annum, despite the fact that the Constitution of the state, in article 14, sec. 2 thereof, provides:

"The legal rate of interest shall not exceed six per cent. per annum, in the absence of any contract as to the rate of interest and, by contracting, parties may agree upon any rate not to exceed ten per cent. per annum, and, until reduced by the Legislature, such rates of six and ten per centum shall be respectively, the legal and the maximum contract rates of interest."

Section 1008, Rev. Laws of Okla. 1910, provides:

"All judgments of courts of record and justices of the peace shall bear interest from the day on which they are rendered at the rate of six per cent. per annum."

Notwithstanding the fact that the law provides all judgments shall bear interest at the rate of six per cent. per annum, unless a different rate is contracted for, the court entered judgment bearing an illegal rate of interest, to wit, eight per cent., but this of itself would not be sufficient to reverse this cause, as the illegal rate of interest could not properly attach to the judgment, but the unbroken line of decisions hold that mere naked possession of land, unaccompanied by partial payment under an admittedly oral contract for the sale of land, is not sufficient to take the transaction out of the statute of fraud, and in view of the unbroken line of decisions that specific performance will not be decreed for the sale of goods, wares, and merchandise that may be easily replaced and easily compensated for in money damages, and for which the complainant has an adequate and complete remedy at law, this cause will be reversed and remanded with instructions to the trial court to enter judgment for the plaintiff in error, defendant below, and cost taxed against the defendant in error, plaintiff below.

Reversed with instructions.

By the Court: It is so ordered.