## FORTNER v. WILSON.

No. 33674. March 21, 1950.

*216 P. 2d 299.*

Meacham, Meacham, Meacham & Meacham, of Clinton, for plaintiff in error.

Ira Monroe, of Clinton, for defendant in error.

HALLEY, J. We shall refer to the parties as they appeared in the trial court.

The plaintiff, R. C. Wilson, sued the defendant, J. W. Fortner, in the district court of Custer county, alleging that in January of 1947, he entered into a contract with the defendant, who operated a Chevrolet sales agency, whereby he agreed to purchase and defendant agreed to sell a new Chevrolet car for the list price, plus the usual and ordinary costs of handling, freight and accessories; that the defendant gave plaintiff a written order for the car, bearing the number "44", which showed the order of sequence in which plaintiff would receive the car; that plaintiff deposited $100 to apply on the purchase price; and that the order of sale was signed by both plaintiff and defendant, a copy being attached to plaintiff's petition.

It was further alleged that in August, 1947, the defendant advised plaintiff by letter that before defendant would deliver the new car, plaintiff would have to deliver a "trade-in" car, for which he would be allowed the sum of $600, with the privilege of re-purchase at $25 per $100 over the trade-in allowance.

Defendant later notified plaintiff that his new car had arrived, but would not be delivered until plaintiff delivered to defendant his second-hand "trade-in" car. Plaintiff alleged that he was able, willing, and ready to receive and pay for the new car and, after seeing i tendered the full purchase price and demanded delivery, but that the defendant refused to perform his part of the contract.

Plaintiff further alleged that he was unable to buy a new car like the one in question from anyone except a used-car dealer, and then only at a price of $2,500 or more, resulting in a loss of $709.49. He prayed for a restraining order prohibiting defendant from disposing of the new car, and for judgment requiring defendant to give him title thereto, and, in the alternative, for damages in the sum of $709.51 (sic) and the return of his $100 deposit, with interest, and for $150 attorney's fee. He later filed an amendment to his petition, alleging that to obtain another car he would incur great expense and inconvenience, because new cars were unique commodities at that time, and that he had no other way of receiving a new automobile or to be adequately compensated in an action at law.

Defendant's demurrer to plaintiff's petition was overruled. Defendant answered by general denial, and alleged that the purchase order made a part of plaintiff's petition and dated January 21, 1947, was executed by the parties, but was in fact a transfer of a

similar purchase order of a car by J. W. Whelchel, dated October 20, 1946, a copy of which was attached to the answer; that the Whelchel order, by error, bore the number "44", but was in fact No. 43; that Whelchel had a purchase order and deposit with the defendant for a new car, which provided for a "trade-in", and that plaintiff and Whelchel had made an agreement whereby plaintiff purchased the Whelchel order and deposit, and had directed defendant to transfer Whelchel's order and deposit to plaintiff; that plaintiff took the Whelchel order with full knowledge that it provided for a trade-in upon delivery of the new car.

Plaintiff filed an election of remedy by which he elected to stand upon his plea for specific performance, and dismissed without prejudice his cause of action for damages.

Plaintiff testified that in the early part of 1947 he went to defendant's place of business and told him he wanted to put in an order for a new car, and defendant advised him that the kind he wanted would then cost about $1,540, but that he did not know what "extras" it might have. That defendant told him that a man who had an order and deposit in had just taken down his deposit money to pay income taxes, and that he could let plaintiff have that number. That he made the $100 deposit and received a purchase order and receipt. That nothing was said about a trade-in; that he did not know Whelchel and never had any dealings with him, and never saw Whelchel's purchase order, and that its contents were never mentioned to him. He stated further that, in August, 1947, he received a letter from the defendant in which a trade-in was first mentioned. That about four months later, the defendant advised him that his new car had arrived and that the total price, including all charges, was $1,790.15, but that plaintiff would have to deliver his used car as a "trade-in"; and that he

replied that no mention of such "trade-in" was in his contract.

Plaintiff's Exhibit 1, being the purchase order, has on its face: "J. M. Welcher's (sic) No. 44." It describes the car to be purchased as a "new Fleetline tan color Bro Tudor". It recites a $100 deposit, and is signed by Wilson and by Fortner. It bears many printed words and blanks, and contains many printed conditions on the reverse side. It makes no mention of a "trade-in".

The same printed purchase order form was introduced by the defendant, and appears to have been signed by J. W. Whelchel, and has written in for the price of the car: "Seling" (ceiling). It further recites: "Tread in alouence. Seling less dep. or labor. $100 refund is not aggried. No. 43."

The court found that the sale to the plaintiff was a sale direct by defendant to plaintiff, and that plaintiff did not buy any contract from Whelchel, but that plaintiff was simply assigned Whelchel's number by the defendant, and that there was no "trade-in" agreement between plaintiff and defendant. It was found that new cars were not available in the open market at that time and could be purchased only at a risk on used-car lots at from $2,300 to $2,600, and that plaintiff was entitled under the evidence to specific performance. Judgment was rendered that defendant must specifically perform the contract upon payment by plaintiff of $1,690.51, and that upon failure of defendant to perform the contract, the sheriff of Custer county should execute to the plaintiff a bill of sale for the car in question.

The defendant has appealed from this judgment, and bases his prayer for reversal principally upon the ground that the evidence is not sufficient to sustain the judgment of the court. This contention is based upon the ground that equity will not enforce a contract for the purchase of an automobile, because

the remedy at law, by action for breach of contract, is adequate, and because the evidence here discloses a contract so indefinite and uncertain in its terms that equity will not grant specific performance.

A careful examination of the evidence discloses sufficient evidence to support the finding of the court that new Chevrolet automobiles were not available on the open market at that time, and could only be obtained at great expense and inconvenience from used-car dealers; but the fact remains that they could be obtained.

Although there is respectable authority which sustains the defendant's position that the contract of purchase was so indefinite and uncertain in its terms that equity would not grant specific performance, we think that the rule which really controls in this case is that in the sale of personal property, equity will not force specific performance where plaintiff had an adequate remedy at law. The general rule in this matter is laid down in 58 C.J., Specific Performance, §247(c), which is as follows:

"While statutes in some jurisdictions authorize specific performance of contracts for the sale of personal property, in accordance with the general rules specific performance of a contract for the sale of personal property will not ordinarily be granted, because there is an adequate remedy at law, as in an action for damages for breach of contract. So a contract to convey chattels having a market value cannot be specifically enforced, unless damages in lieu thereof would be inadequate; and a court of equity therefore will not, unless there is some specific reason, specifically enforce a contract for the sale of ordinary articles of commerce, which can at all times be bought in the market, such as barroom fixtures, cattle, coal, corn, cotton, logs or lumber, pianos, sauerkraut, whisky, used cars, or an existing business and stock in trade, since the remedy at law for a breach of such contract is regarded as complete and adequate. Moreover, an agreement to pay for an article in

the products thereof will not generally be specifically enforced, but the remedy is by an action at law to recover the price in money."

This rule was recognized by this court in the case of Flechs v. Richie, 91 Okla. 95, 216 P. 644, in which it was held that where personal property which was being sold consisted of a stock of merchandise that could be easily duplicated and had a fixed market value, equity would not decree specific performance. The evidence in this case showed that the only place that a car could be bought in Custer county, Oklahoma, would be from a used-car dealer, at a price over and above the list price. This question has arisen in several states since World War II. The only court of last resort which has passed on this question favorably to the plaintiff was the Supreme Court of Kansas, in the case of Heidner v. Hewitt Chevrolet Co., 166 Kan. 11, 199 P. 2d 481. The facts in that case were very similar to those in this case. The Supreme Court of Kansas decreed specific performance, and based its decision on the ground that a similar automobile apparently could not be purchased on the market at the time specified in the contract. The court took the view that by virtue of the fact that it was difficult to obtain an automobile such as that contracted for on the open market, specific performance would be granted, regardless of the adequacy of damages that might be obtained. The Common Pleas Court of Ohio, in DeMoss v. Conart Motor Sales, Inc., 72 N.E. 2d 158, also ordered specific performance in a case involving similar facts. Also, in Boeving v. Vandover, 218 S. W. 2d 175, the Springfield Court of Appeals, Missouri, followed the Kansas decision, in a case very similar in facts to the one at bar.

Against these cases, holding that specific performance will be ordered, are the cases of Kirsch v. Zubalsky, 49 A. 2d 773, from the Court of Chancery of New Jersey, dated November 15, 1946; Welch v. Chippewa Sales Co., 252 Wis.

166, 31 N.W. 2d 170, decided February 16, 1948; Poltorak v. Jackson Chevrolet Co., 322 Mass. 699, 79 N.E. 2d 285, decided May 7, 1948, by the Supreme Court of Massachusetts; and McCallister v. Patton, 214 Ark. 293, 215 S.W. 2d 701, decided December 13, 1948, by the Supreme Court of Arkansas. The courts in these cases have very carefully considered the question now before us. The case of McCallister v. Patton, supra, from the Supreme Court of Arkansas, is a well written opinion, and holds that specific performance will not be decreed "where buyer made down payment on Ford superdeluxe, tudor sedan and radio under written order promising delivery as soon as possible, and seller refused to comply although he had received vehicle of type and description in contract, and buyer was unable to purchase automobile of that description at any other place or upon open market, in absence of showing that car ordered had special peculiar qualities not commonly possessed by others of same make, rendering it practically impossible to replace in the market".

In Poltorak v. Jackson Chevrolet Co., supra, it was held that the mere fact that there was a scarcity of automobiles, causing a considerable delay in delivery, and in the absence of showing substantial harm of a kind which could not be adequately compensated by an award of damages in an action at law, specific performance would not be decreed. In that case, as here, the question of a trade-in was involved.

In Welch v. Chippewa Sales Co., supra, the purchaser was to deliver an old car, on which he was to be allowed $1,070, less $255 for repair, and the price on the new car was $2,845, and the buyer had been told by another dealer that the list price on the car in question was $2,358 plus $200 for radio and air-conditioning. Buyer had offered this amount, but the defendant had refused to deliver unless the plaintiff met his terms; and, in that case,

the Supreme Court of Wisconsin refused to grant specific performance.

This matter was considered by certain intermediate courts in Kaliski v. Grole Motors, 69 N.Y.S. 2d 645; Goodman v. Henry Caplan, Inc., 65 N.Y.S. 2d 576; Cohen v. Rosenstock Motors, Inc., 65 N.Y.S. 2d 481; Gellis v. Falcon Buick Co., Inc., 76 N.Y.S. 2d 94; Crisanti v. Salemi, 35 Del. Co. 62; and Hysock v. Palermo (Pa.) 57 D. & C. 253, 42 Sch. L.R. 131, and specific performance denied.

Regardless of what our personal views may be as to the business ethics of the defendant in this case, the fact remains that the property being sold was an article which could be obtained, by paying an additional amount of money, in the open market. It was known as a "gray market" at that time, because of the fact that the OPA regulations had been removed. This was personal property; there was nothing unique in any way about it which would cause it to come under the exceptions to the rule that specific performance will not be granted as to personal property. We see no reason why we should depart from the position that we have previously taken, that unless there is something unique in the article sold, or something about it that would prevent money damages from giving full relief, specific performance will not be granted.

In this case, the facts show that the defendant dealer was ready and willing to sell the plaintiff this automobile if the plaintiff would turn in his used car, and offered to let plaintiff repurchase the used car for $600 plus $25 for each $100 of its trade-in valuation, which would have been $750. Of course, this was just a way in which the dealer was getting a price over and above the list price that he was allowed by the manufacturer to charge; but all the plaintiff would have had to do was turn in his used car, arrive at the definite amount that he had been forced to pay for the new car over and above what

his contract called for, and then sue the defendant for damages in the amount of money that he had been compelled to pay above list price. It was held in New England Box Co. v. Prentiss, 75 N.H. 246, 72 A. 826, that where a buyer of planks at the market price and the seller have a controversy as to the market price, and the seller is willing to deliver the planks at a designated price, the buyer cannot, on refusing them at such price, compel specific performance of the contract, since he can supply his wants by taking the planks at the specified price and recover in an action at law the loss sustained.

It clearly appears that the plaintiff in this case had an adequate remedy at law, and, such being the case, equity does not grant specific performance. As stated above, even though we have a distaste for such a business transaction, we see no reason to justify us in departing from the rule of equity which has been in force from time immemorial.

The judgment of the trial court is reversed, with directions to enter judgment for the defendant.

DAVISON, C.J., ARNOLD, V.C.J., and CORN, LUTTRELL, and JOHNSON, JJ., concur. O'NEAL, J., dissents.