Charles B. CHADWELL, Appellee,

v.

Lucile ENGLISH; R.C. Brown, Floyd W. Kennedy, Jr., Jerry Mustain, James O. Barnett, Earl Glover, O.V. Warner and Weldon Smith, as Trustees of the English Grandchildren's Trust; and Peter C. King, Executor of the Estate of Exall English, Deceased, Appellants.

No. 55195.

Court of Appeal of Oklahoma, Division No. 2.

May 11, 1982.

Rehearing Denied July 2, 1982.

Certiorari Denied Aug. 26, 1982.

Released for Publication by Order of Court of Appeals Oct. 8, 1982.

Sam H. Johnson, Rhoads & Johnson, Lawton, S. Paul Hammons, Andrews, Davis, Legg, Bixler, Milsten & Murrah, Oklahoma City, for appellee.

Ralph W. Newcombe, Newcombe & Redman, Lawton, for appellants.

BACON, Judge.

Appeal from order granting specific performance of option contract to purchase shares of bank stock. Charles B. Chadwell entered into an option agreement with his mother- and father-in-law, Mr. and Mrs. Exall English, wherein he would have an option to purchase their shares of the Security Bank & Trust Company of Lawton, Oklahoma. An attempt to exercise the option was made by Chadwell during December 1977 and January 1978 but the Englishes refused to convey. Chadwell brought suit for specific performance of the contract. After lengthy trial in March 1980 the trial court rendered an order decreeing specific performance. It is that order challenged on appeal. We affirm.

Until 1976 the Security National Bank of Lawton, Oklahoma, had authorized, issued and outstanding 6,700 shares of common stock. On July 14, 1976, the stock was split and divided into two classes; class A, voting stock, and class B, nonvoting stock. As a result of the split each stockholder of record exchanged one share of the old issue for one share of new class A and three shares of new class B stock.

Prior to the stock split Exall English, president of the bank, and his wife owned approximately 2,487 shares of old stock. This stock and the stock of certain minority shareholders when voted as a block gave Exall English control of the bank which he had exercised for some 38 years.

In preparation to assure that control of the bank would remain with the English family, Mr. English brought his son-in-law, Peter C. King, into the bank. After working several years at the bank, King decided to seek other employment and accepted another job in Tulsa, Oklahoma. English, motivated by the desire of family control of the bank, then requested his other son-in-law, Charles B. Chadwell, to move to Lawton and join him in the management of the bank. The offer was accepted and Chadwell moved his family to Lawton, and in a few years, he became an officer of the bank.

With Chadwell present at the bank, English began to search for a method which would allow him to liquidate substantial outstanding indebtedness and thus allow him to retire.

As plan after plan was devised and discarded for one reason after another, English became more determined to abolish his debts. He then proposed to sell all of his bank stock to the "bank family" and his two daughters and sons-in-law. The plan was that bank employees (including Chadwell) were to enter into a mortgage agreement with a Texas bank and purchase some one million dollars worth of shares, English would retire, and Chadwell would be elected as president of the bank with a 10 year management contract. The above plan materialized with only some slight changes. The employees only purchased, 1250 shares of English stock, subject to a voting agreement. Chadwell did not receive a 10 year management contract, but he did receive a 10 year option agreement from the Englishes for purchase of their remaining shares of stock. This allowed liquidation of the English debt and appeared to ensure that control of the bank would remain in the family through Chadwell.

In December 1977 and January 1978, Chadwell chose to exercise his option and attempted to buy 330 shares of class A stock. English refused to honor the option contract, gathered support of other stockholders and removed Chadwell from his

presidency of the bank. Upon firing Chadwell, the Englishes transferred their stock into a trust for their grandchildren.

On July 27, 1978, Chadwell filed the present suit for specific performance of his right to exercise his option to purchase the English stock. After suit was filed Exall English died and the executor of his estate, Peter C. King, was substituted as a party defendant. At close of trial the trial judge decreed specific performance to Chadwell of 1,321 shares of class A stock and 3,963 shares of class B stock.

Appellants (the executor of Exall English's estate, his widow and trustees of the grandchildren's trust) argue under eight propositions for error; the first three read:

1. Specific performance does not lie for the enforcement of an option agreement to buy corporate stock and the Trial Court erred in refusing to sustain the Demurrer of the Defendants and in granting specific performance.

2. The Trial Court erred in specifically enforcing the Option Agreement as its terms are uncertain as to both the number and class of shares.

3. The Trial Court erred in decreeing specific performance of the Option Agreement because it violates the Statute of Frauds.

They generally raise the argument that the underlying option contract is not of a nature that lends itself to the equitable relief of specific performance. For discussion of the agreement in question we set the contract out as presented to us through the record.

THIS AGREEMENT made this 7th day of January, 1977, between Exall English and Lucile English, hereinafter called SHAREHOLDERS and Charles B. Chadwell, hereinafter called CHADWELL.

WHEREAS, SHAREHOLDERS are the owners of ____ shares of the common capital stock of Security Bank & Trust Company of Lawton, Oklahoma, hereinafter called THE COMPANY and,

WHEREAS, the SHAREHOLDERS desire to grant CHADWELL an option to purchase said shares, and whereas CHADWELL desires to be granted said option,

IT IS THEREFORE AGREED AS FOLLOWS:

1. During the term of 10 years from the date of this agreement, CHADWELL shall have the right to purchase the shares owned by the SHAREHOLDERS for the purchase price hereinafter mentioned.

2. The option to purchase the stock of the SHAREHOLDERS shall be exercised on or before the expiration of 10 years from the date hereof by CHADWELL by delivery of written notice to the SHAREHOLDERS or their personal representatives.

3. The purchase price for each share of stock shall be $125.00 per share. The purchase price shall be payable in cash upon exercise of this option.

4. CHADWELL shall have the right to purchase any portion of the shares prior to the expiration of 10 years from the date of this agreement upon the payment of purchase price as aforesaid.

5. Notwithstanding anything herein contained to the contrary, this agreement shall terminate and all rights and obligations thereunder shall cease upon the happening of any of the following events:

(a) The adjudication of the company as bankrupt or the execution by it of any assignment for the benefit of creditors, or the appointment of receivor for the company.

(b) The voluntary or involuntary dissolution of the company.

(c) The death of CHADWELL.

6. This Agreement shall be binding upon and inure to the benefit of the SHAREHOLDERS and CHADWELL, and their respective administrators, executors and assigns.

7. This agreement is made pursuant to the laws of the State of Oklahoma and shall be governed in all respects by said law.

8. This agreement has been executed in a number of identical counterparts,

each of which shall be an original for all purposes.

IN WITNESS WHEREOF, the parties have signed this agreement this _____ day of January, 1977.

> s/Charles B. Chadwell
> Charles B. Chadwell
> CHADWELL
> s/Exall English
> Exall English
> s/Lucile English
> Lucile English
> SHAREHOLDERS

■ Appellants cite *Fortner v. Wilson,* 202 Okl. 563, 216 P.2d 299 (1950), wherein the supreme court said:

> While statutes in some jurisdictions authorize specific performance of contracts for the sale of personal property, in accordance with the general rules, specific performance of a contract for the sale of personal property will not ordinarily be granted, because there is an adequate remedy at law, as in an action for damages for breach of contract. So a contract to convey chattels having a market value cannot be specifically enforced, unless damages in lieu thereof would be inadequate; and a court of equity therefore will not, *unless there is some specific reason, specifically enforce a contract for the sale of ordinary articles of commerce, which can at all times be bought in the market.* (emphasis ours)

However, since *Fortner* Oklahoma has adopted the Uniform Commercial Code. Title 12A O.S.1971 § 2–716 proclaims:

> Buyers Right to Specific Performance or Replevin—
> (1) Specific performance may be decreed where the goods are unique or in other proper circumstances.
> (2) The decree for specific performance may include such terms and conditions as to payment of the price, damages, or other relief as the court may deem just.

The comments following § 2–716 clearly show the purpose of this section is to "fur-ther a more liberal attitude than some courts have shown in connection with the specific performance of contracts of sale."

■ Specific performance is an equitable action and its application is addressed to the sound discretion of the trial court.[1] In order to be entitled to the equitable relief of specific performance plaintiff must show: (1) an existing valid contract with a party from whom performance is requested; (2) the contract is just and its enforcement would be equitable; (3) his performance of obligations under the contract or his readiness or willingness to do so; and (4) defendant's ability to perform.[2]

■ Under § 2–716, *supra,* and the discretion granted the trial judge in matters such as this, we cannot hold as a matter of law or equity that specific performance should never be granted in cases involving stock option purchase contracts.

In this particular case the stock existed in extremely low volume, was not traded in a ready market, and was seldom exchanged. Large numbers of shares rested in the hands of only three or four identities (one of which was English) and loss of the English stock would make control difficult if not impossible to achieve. If this particular stock is not unique at least its scarcity and its lack of access creates circumstances proper for specific performance. The evidence does not convince us the trial court abused its discretion by granting specific performance.

■ Next, the attorney for appellants attacks the option agreement. In brief, the argument is that the lack of an agreement specifically stating the number of shares to be bought or sold is fatal to the requested remedy. It was held in *Detar Distributing Co. v. Tri-State Motor Transit Co.,* 379 F.2d 244 (10th Cir. 1967), that:

> "The controlling terms and conditions of the contract being ... clear, the rule so strongly relied upon by appellants that an ambiguous contract may not be specifically enforced does not apply."

1. *Bobo v. Bigbee,* Okl., 548 P.2d 224 (1976).

2. *Shepard v. French,* Okl.App., 612 P.2d 727 (1980).

We think the controlling terms and conditions of the present contract are clear. The contract says, "shareholders [the Englishs] are the owners of _____ shares of common capital stock . . . ," and "shareholders desire to grant Chadwell an option to purchase said shares . . . during the term of 10 years from the date of this agreement . . . Chadwell shall have the right to purchase the shares owned by the shareholders for the price hereinafter mentioned." We find the agreement to be clear and unambiguous. The fact that the number of shares owned by shareholders on the date of the agreement was blank does not make the contract invalid or ambiguous. In the absence of a specific stated amount, Chadwell would have the right to purchase any and all shares owned by shareholders at any given time during the 10 year period.

Appellants next argue the agreement violates the statute of frauds. Appellants cite 12A O.S.1971 § 8–319 which states in part:

Statute of Frauds

A contract for the sale of securities is not enforceable by way of action or defense unless

(a) there is some writing signed by the party against whom enforcement is sought or by his authorized agent or broker sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a defined or stated price . . . .

Appellants argue the option does not contain a specific "stated quantity" of shares to be sold, therefore, the statute of frauds defeats Chadwell's lawsuit. As previously pointed out herein the contract states the Englishs "are the owners of _____ shares of common capital stock of Security Bank and Trust Company of Lawton, Oklahoma," and "desire to grant Chadwell an option to purchase said shares . . . ." We hold in the absence of a showing to the contrary the Englishes intended to grant Chadwell an option to purchase all or any portion of shares of stock owned by them at any time Chadwell chose to exercise his option. We conclude the statute of frauds does not void the option in question.

Appellants then take the position:

"The Trial Court erred as equity should not grant specific performance where the Plaintiff stood in a fiduciary relationship with the Defendants and the Plaintiff failed to overcome the equitable presumption that the Agreement was unfair, overreaching, and void."

Assuming but not deciding that a fiducial relation existed between the parties, the record is void of evidence that Chadwell took unfair advantage of his influence and confidence to obtain the favorable option agreement. An agreement that has enviable terms is not *ipso facto* one born of devious, unfair advantage taking. The record supports the fact that the $125 price per share was adequate based upon sales of shares reasonably close in time to the execution of the option contract. The life span of the option could just as easily been born of bad or even good business judgment as of a breach of a fiduciary duty.

■■■ Was the option supported by consideration? Title 15 O.S.1971 § 115 reads:

"Burden of proof as to consideration. . . . The burden of showing a want of consideration sufficient to support an instrument lies with the party seeking to invalidate or avoid it."

A written contract is presumed to be supported by consideration. Our statutes provide:

Good consideration is any benefit conferred, or agreed to be conferred upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered or agreed to be suffered by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise. 15 O.S.1971 § 106.

The record does clearly reflect consideration. English wanted to liquidate his debts, retire and sell his stock to (1) sons-in-law 50–50; (2) either son-in-law; or (3) either son-in-law and the "bank family." Further, the only one of the above enumerated who suffered detriment in formulation of a plan

to carry out the wish was Chadwell. Once an option agreement is supported by consideration it may not be revoked at the will of the offeror but remains a binding offer for the length of its term. We conclude there is no merit to appellants' argument that there is no "consideration" to support the agreement.

■ The Englishes included in their answer to Chadwell's petition a counter-claim wherein they alleged he owed them $60,000. The trial court denied the counter-claim. We note the $60,000 Chadwell allegedly owed had been discharged in bankruptcy prior to the trial of the present case. In fact, English received partial payment in the bankruptcy action as a creditor of Chadwell. The evidence further shows Chadwell and Exall English engaged in procuring loans for each other from the bank for the purpose of defeating the restrictions upon a bank president's ability to borrow. While English was president of the bank his ability to borrow from it was limited, therefore, Chadwell as vice-president took loans for him. When Chadwell became president, English then borrowed money from the bank to remove the prohibition restricting Chadwell's ability to borrow. Review of the record convinces us that the allegations of the debt were not proven with sufficiency to establish that the debts were incurred for Chadwell's benefit and not the benefit of English.

■ The last proposition to be commented upon is:

"The decree of specific performance is void and this action should be dismissed by reason of Chadwell's failure to comply with the decree of the trial court."

At time of decree of specific performance the trial judge ordered that Chadwell tender payment in the form of cash within 10 days or the decree would be null and void and the case dismissed. Chadwell did not tender cash but instead tendered a cashier's check. On Appellants' motion to dismiss for failure to tender "cash" the trial court said, "the court would consider cash, cashier's check, certified check or postal money order as legal tender." We hold that the trial court can explain or make its orders more definite. The trial court is in an excellent position to protect all parties involved and acceptance of the cashier's check as legal tender was well within its discretion.

The decree of specific performance is affirmed. Order granting parties "Application to Invest Funds Tendered Into Court" is attached hereto.

BOYDSTON, P.J., and BRIGHTMIRE, J., concur.

## ORDER

Now on this 11th day of May, 1982, there came on for hearing the Application filed in this cause by the Appellee, Charles B. Chadwell for authority to invest funds tendered into the registry of the District Court of Comanche County, Oklahoma. The Court being fully advised in the premises, finds that one of the issues on appeal in this cause, more particularly described in Proposition VII of Appellants' Brief in Chief and in Proposition VII of Appellants' Reply Brief is the contention of Appellant that Appellee wholly failed to comply with the Judgment of the District Court of Comanche County, Oklahoma, entered on April 15, 1980, and by reason of Appellee's failure to comply, that the Decree of specific performance is void and this action should be dismissed.

The Court further finds that an Order should be issued authorizing the Appellee to withdraw from the custody of Janice Mitchell, Comanche County Court Clerk, the document described as cashier's check no. 93259 issued by the Sheridan Bank of Lawton, Oklahoma, dated April 22, 1980, payable to Lucile English, Peter C. King, Executor of the Estate of Exall English, Deceased; J.C. Kennedy; Floyd W. Kennedy, Jr.; James O. Barnett; R.C. Brown; Grover B. White; O.V. Warner; Earl Glover; Weldon Smith; Ralph W. Newcombe, and Jerry Mustain, Trustees of the English Grandchildren's Trust, provided that Appellee within ten days from the date of withdrawal, deliver into the custody of Janice Mitchell, Coman-

che Court Clerk, an interest bearing U.S. Treasury obligation maturing not longer than 45 days after its date of purchase, payable to Janice Mitchell, Comanche County Court Clerk, and that the Court Clerk should be authorized and directed to re-invest the proceeds of such obligation in like securities for like periods of time pending resolution of this matter on appeal.

The Court further finds that all interest accruing on such obligation should be added to the principal and reinvested pending the further order of this Court; provided, however, that this Order is made without prejudice to any issue on appeal.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that the Appellee, Charles B. Chadwell, be, and he is hereby permitted to withdraw from the custody of the Court Clerk of Comanche County, Oklahoma, cashier's check no. 93259 issued by the Sheridan Bank of Lawton, Oklahoma, dated April 22, 1980, in the principal sum of $660,500.00, made payable to Lucile English; Peter C. King, Executor of the Estate of Exall English, Deceased; J.C. Kennedy; Floyd W. Kennedy, Jr.; James O. Barnett; R.C. Brown; Grover B. White; O.V. Warner; Earl Glover; Weldon Smith; Ralph W. Newcombe; and Jerry Mustain, Trustees of the English Grandchildren's Trust; provided, however, that the Appellee shall, within ten days from the date of withdrawal, deliver into the custody of Janice Mitchell, Comanche County Court Clerk, an interest bearing U.S. Treasury obligation maturing not longer than 45 days from its date of purchase, such security to be payable to Janice Mitchell, Comanche County Court Clerk.

IT IS FURTHER ORDERED that Janice Mitchell, Comanche County Court Clerk, be, and she is hereby directed to reinvest the proceeds of such obligation together with any interest accrued thereon in the same U.S. Treasury obligation for 45 day periods during the pendency of this action, or until the further order of this Court.

IT IS FURTHER ORDERED that this Order is made without prejudice to the contention of the Appellants herein that the Decree of specific performance entered by the District Court of Comanche County is void by reason of the Appellee's failure to comply with the Order of the District Court requiring the deposit of $660,500.00 in cash with the Court Clerk within ten days from April 15, 1980.